**R. C. OVERSTREET, d/b/a Keeland-Overstreet Hardware Company, Appellant,**

**v.**

**HOUSTON COUNTY, Texas, et al., Appellees.**

No. 14119.

Court of Civil Appeals of Texas.

Houston.

Feb. 21, 1963.

Rehearings Denied March 14, 1963.

J. B. Sallas, Crockett, for appellant.

Nat Patton, Jr., County Attorney, Crockett, for appellees Commissioners Court of Houston County, Texas.

Adams & Granberry; F. P. Granberry, Crockett, for appellees T. D. Craddock, Individually and d/b/a Craddock Hardware Co. and Carl Renfro, d/b/a Renfro Electric Clinic.

WERLEIN, Justice.

This is an appeal from an order of the trial court denying appellant, R. C. Overstreet, d/b/a Keeland-Overstreet Hardware Company, a taxpaying citizen of Houston County, a temporary injunction against Houston County, Texas, et al. The suit was brought by appellant individually and in the nature of a class suit, praying for a temporary restraining order, temporary injunction, and, on final hearing, a permanent injunction, enjoining appellees from proceeding further with the air conditioning of Houston County Courthouse, or from performing or doing any work in connection therewith.

Appellant alleges in substance that on or about June 1, 1962 the Commissioners Court of Houston County invited bids on a proposed project to air condition the Courthouse in accordance with certain plans and specifications; that he and appellee, T. D. Craddock, d/b/a Craddock Hardware, submitted sealed bids; that Craddock was low bidder and was awarded the contract on July 9, 1962; that Craddock thereafter learned that he could not comply with the terms of the plans and specifications because the company he represented, as local agent, did not manufacture the type of units specified, and he so informed members of the Houston County Commissioners Court, who on July 26, 1962 authorized Craddock to deviate from the original plans and specifications and to furnish different types of equipment than that specified, thus letting a new and different contract without advertising for bids, in violation of Section 2, Article 2368a, Vernon's Annotated Texas Civil Statutes; that the Commissioners Court failed to execute a contract in behalf of the County and failed to require Craddock to execute performance and payment bonds, in violation of Articles 2368a, Sec. 2, and 5160, V.A.T.S.; and that the actions of the Houston County Commissioners Court are void and subject to being enjoined by any taxpayer.

Appellees take the position that the contract awarded Craddock though originally not formally prepared, is evidenced by the minutes of the Commissioners Court; that the transaction of July 26, 1962 was simply a change in the specifications with respect to certain personal property after the installation work had begun; that the change consisted of changing the voltage for the new equipment from 208 to 230, together with the installation of necessary transformers, and of changing certain of the window type air conditioners by substituting eleven 1 HP units, six 1½ HP units and one 2 HP unit for nineteen 1 HP units originally specified; that the change in voltage, installation of transformers neces-

sary therefor, and change in the window units specified were at no cost to the County and did not change the contract price; that Craddock sublet to appellee, Renfro, the job of installing the transformers at no additional cost to the County; and that the original agreement of the County and appellee Craddock and the change in the specifications were reduced to formal contract and the performance and payment bonds defined by Article 5160, V.A.T.S., were executed, approved and filed during the temporary injunction trial.

We are of the opinion that the trial court did not err in refusing to grant the temporary injunction upon termination or dissolution of the temporary restraining order which was issued August 4, 1962 and which had been continued in force by timely and appropriate orders. Houston County Commissioners Court advertised for bids as required by Sec. 2, Art. 2368a, based upon the original plans and specifications, and the contract was awarded to appellee Craddock, whose bid was $13,358.25, as opposed to appellant's bid of $14,451.58. After performance of the informal contract awarded said appellee on July 9, 1962 commenced, the Commissioners Court on July 26, 1962, for reasons considered by it to be sufficient, concluded that it was necessary to make changes in the original plans and specifications and approved changes which did not in any way increase the total contract price. As shown by the trial amendment filed by Craddock and Renfro on August 28, 1962 the informal contract of July 9, 1962 and the agreement of July 26, 1962, making the necessary changes, were reduced to writing and duly acknowledged by the parties thereto on August 27, 1962, prior to the entry of the trial court's judgment on September 4, 1962 dissolving the temporary restraining order and denying appellant's application for a temporary injunction.

We do not agree with appellant that the agreement making the changes constitutes a new and entirely different contract. It provides that except as modified, the contract of July 9, 1962 shall remain in full force and effect. It further provides that the specifications set out in the contract of July 9, 1962 are changed by deleting therefrom "19 1 HP window type air conditioning units, 208 Volts with a minimum of 12,-000 BTUs per hour capacity each" and by substituting therefor "11 1 HP units with 10,000 BTUs, 6 1½ HP units with 15,000 BTUs, and 1 2 HP unit with 18,000 BTUs." The agreement also provides for certain wiring and the installation of certain transformers necessary to supply the proposed air conditioning system with 230 volt current instead of 208 volt current, and states that the County had made an agreement with Carl Renfro for certain wiring and the installation of certain transformers necessary to supply the proposed air conditioning system with 230 volt current instead of 208 volt current, and that the contract price between the contractor and the County would be reduced by the sum necessary to pay the said Carl Renfro for his services.

Article 2368a, Sec. 2a, V.A.T.S., effective May 8, 1953, provides:

"In the event it becomes necessary to make changes in the plans or specifications after performance of a contract has been commenced, or it becomes necessary to decrease or increase the quantity of work to be performed or materials, equipment or supplies to be furnished, the Commissioners Court or governing body shall be authorized to approve change orders effecting such changes but the total contract price shall not be increased thereby unless due provision has been made to provide for the payment of such added cost either by appropriating available funds for that purpose or by authorizing the issuance of time warrants as provided in the Act amended hereby.

"Provided, however, that the original contract price may not be increased under the provisions of this Section 2a by more than twenty-five (25%) per cent or decreased more than twenty-

five (25%) per cent without the consent of the contractor to such decrease."

■ In comparing the original specifications with the change order agreement it is noted that no change is made in some 7 of the air conditioning units, including two 4 HP central system units in the District Court and one 5HP central system unit in the County Court. It is our view that the Commissioners Court was authorized by Article 2368a, Sec. 2a, V.A.T.S., to make the changes deemed necessary by it and that it was not required to let on competitive bidding the original specifications and plans as modified by the agreement of July 26, 1962.

Even before the amendment in 1953 adding to Article 2368a Section 2a, which authorizes the Commissioners Court or other governing body to make changes in the plans and specifications after performance of a contract has commenced, the Commissioners Court had authority to make considerable modifications in the original contract. Headlee v. Fryer, Tex.Civ.App., 208 S.W. 213, writ dism. It is manifest that under Section 2a extensive changes may be made so long as the original contract price is not increased more than 25% or is not decreased more than 25% without the consent of the contractor to such decrease. In the instant case, as above stated, no change was made in the contract price. It may be observed also that the evidence shows that appellee offered to perform the contract according to the original plans and specifications, but the Commissioners Court preferred that the suggested changes be made.

Appellant asserts that the court erred in not granting his application for a temporary injunction since the oral contract between Houston County Commissioners Court and Craddock violated Section 2 of Article 2368a, V.A.T.S., and also Article 5160, V.A.T.S., in that payment and performance bonds were not required. Article 2368a, V.A.T.S., makes it mandatory that the successful bidder on any contract for the construction of public works be required to give a good and sufficient bond in the full amount of the contract price, for the faithful performance of such contract, in accordance with the provisions of Article 5160, V.A.T.S.; 34 Tex.Jur., p. 741, Public Works and Contracts, Sec. 8. Article 5160, V.A.T.S., provides in substance that any person entering into a formal contract in excess of $2,000.00 with any County of this State or any governmental authority authorized under any law of the State to enter into contractual agreements for the construction, alteration or repair of any public building or the prosecution or completion of any public work, shall be required before commencing such work to execute to the governmental authority a performance bond in the amount of the contract conditioned upon the faithful performance of the work in accordance with the plans and specifications for the protection of the governmental authority awarding the contract, and a payment bond in the amount of the contract for the protection of claimants supplying labor and material for the prosecution of the work provided for in the contract.

The performance bond and payment bond in this case were not executed, approved and filed until after the work had commenced and the hearing on the application for temporary injunction had begun. Prior to dissolution of the temporary restraining order, which was properly issued, and the order of the court denying appellant a temporary injunction, appellee Craddock had provided the required bonds which were approved and filed.

■ We agree with appellant that the contract in question called for the construction of public works, in that the central system air conditioners as well as the window units were to be installed in the Courthouse as fixtures, or improvements of a fixed nature, and that it was therefore necessary for Craddock to provide the re-

quired bonds. 34 Tex.Jur., p. 731, Public Works and Contracts, Sec. 2, and authorities cited.

In Globe Indemnity Company v. Barnes, Tex.Com.App., 288 S.W. 121, the court said:

"The purpose of the statute under consideration was to protect persons furnishing material or labor in the construction of public works against which there could exist no lien for their protection. The method pursued was intended to effect this protection through a bond required to be executed by the contractor. The execution of the bond conditioned as required by the statute is made a condition precedent to the right to commence such work. Such a contract can only be carried out lawfully after the execution of the bond as required by statute. The effect of the statute is to declare the liability of one executing the bond for such a contractor."

In the instant case, while the bonds were filed late, they were filed during the temporary injunction hearing and before judgment was entered and in time to accomplish the legislative purpose of protecting the County and persons furnishing material or labor for the construction work. Ordinarily if the legislative purpose is accomplished the law is satisfied. In Kerbow v. Wooldridge, Civ.App., 184 S.W. 746, error ref., there was a defective bond which did not comply with the statute, but the court allowed a recovery because the bond was good as a common law obligation.

Art. 2368a, Sec. 2, providing for submitting to competitive bids any contract calling for or requiring the expenditure or payment of $2,000.00 or more, and for giving a performance bond in accordance with the provisions of Art. 5160, V.A.T.S., also provides:

"Any and all such contracts or agreements hereafter made by any county or city in this State, without complying with the terms of this section, shall be void and shall not be enforceable in any Court of this State, and the performance of same and the payment of any money thereunder may be enjoined by any property taxpaying citizen of such county or city."

If such contract is not submitted to competitive bids, it is void and of no effect whatever and cannot be ratified. 34 Tex. Jur., p. 734, Public Works and Contracts, Sec. 3, and authorities cited; Limestone County v. Knox, Tex.Civ.App., 234 S.W. 131. In the instant case, the contract was submitted to competitive bids, and hence was not void ab initio. Sec. 2, Art. 2368a, V.A.T.S., further provides that the successful bidder shall be required to give a bond for the faithful performance of the contract in accordance with Art. 5160. Article 5160 provides that the contractor shall be required to give both a performance and a payment bond before commencing the construction work. Since in this case he did not do so, the trial court properly issued a temporary restraining order at the instance of appellant, a taxpaying citizen, enjoining performance of the contract and payment of money thereunder, until and pending the hearing on the application for temporary injunction.

 It is our view that appellee's contract, which was not void ab initio, did not automatically become void when he commenced the construction work. True, the further performance of the contract and payment of money thereunder could be enjoined unless the bonds were given. Moreover, the Commissioners Court had the power and authority to avoid the contract if appellee Craddock did not furnish the required bonds. The Commissioners Court also had the power and authority to enforce the contract and compel Craddock to give the statutory bonds. The contract was binding upon appellee who could not have urged his failure to give the bonds as a de-

fense for nonperformance of his contract. The requirements of Art. 5160, V.A.T.S., are in the interest of the State or other governing authority and not the delinquent contractor. State v. Scholz Bros., Tex.Civ. App., 4 S.W.2d 661.

■ The Commissioners Court did not choose to avoid the contract but chose to require appellee to give the prescribed bonds before judgment was entered denying the temporary injunction, and in time to protect both the County and those furnishing labor and material. Manifestly, if the contract became void and of no effect whatever upon Craddock commencing the work without having given the bonds, then the Commissioners Court could not breathe life into it by ratification. If on the other hand, the word "void," as used in Art. 2368a, Sec. 2, with respect to requiring the successful bidder to give a good and sufficient bond for the faithful performance of the contract before commencing work, can be construed with respect to late filing, as voidable at the election of the County, then the County had the authority to either avoid the contract or to insist upon its performance and compel the contractor to post the required bonds. We think the latter construction should be given the word "void" under the circumstances of this case, including the fact that at the time the temporary injunction was denied no payment had been made by the County and the required bonds had been filed.

The word "void" is frequently given the meaning "voidable" in construing statutes. In the expression in the Bulk Sales Law, "shall be void as against creditors" the word "void" is construed as meaning "voidable." Freedman & Mellinger v. Maier, 238 S.W. 1013, writ dism. For examples of the word "void" being given the meaning "voidable" in the construction of other Texas statutes, see Phelps v. Pecos Valley Southern Ry. Co., Tex.Civ.App., 182 S.W. 1156; Carter v. Green, Tex.Civ.App., 64 S.W.2d 1069, writ ref.; Wiener v. Zwieb, 1911, 105 Tex.

262, 141 S.W. 771, 777; Gress v. Gress, Tex.Civ.App., 209 S.W.2d 1003, writ ref., n. r. e.

This Court is not concerned with the propriety of the action of the Commissioners Court. The only question is whether or not the Commissioners Court in accepting and approving the bonds that were filed late, acted within its lawful authority under the circumstances of this case. Pritchard & Abbott v. McKenna, Tex.Sup.1961, 350 S.W. 2d 333.

Appellant's points are directed to the error of the trial court in dissolving the temporary restraining order and denying the temporary injunction because of alleged violations by the Commissioners Court of Arts. 2368a and 5160, V.A.T.S. There is no evidence, aside from said alleged violations of such articles by the Commissioners Court, that the Commissioners Court acted arbitrarily or without the exercise of discretion or that it abused its discretion in accepting and approving the performance and payment bonds and thus requiring appellee to perform his contract as modified by the agreement changing in some particulars the plans and specifications. Stovall v. Shivers, 129 Tex. 256, 103 S.W.2d 363.

■ The record before us presents no dispute between the parties with respect to the controlling facts in this case, although there may be minor disagreements between the parties as to details which are not significant in determining whether the trial court abused its discretion in denying a temporary injunction. The trial court is entitled to have the appellate court pass upon the question of abuse of discretion as of the time the trial court rules. Anderson v. Tall Timbers Corporation, Tex.Sup. 1961, 347 S.W.2d 592. At the time the trial court denied the temporary injunction the original contract and agreement changing the specifications had been reduced to writing and executed and the required bonds had been executed, approved and filed.

In Southland Life Ins. Co. v. Egan, 1935, 126 Tex. 160, 86 S.W.2d 722, opinion adopted by the Supreme Court, it is said:

"While it is true, as stated in Harding v. W. L. Pearson & Co. (Tex.Com. App.) 48 S.W. (2d) 964, 966, that 'The rule is also well established in this state that the granting or refusing of a temporary injunction is within the sound discretion of the district court, and that the court's action will not be disturbed on appeal, unless it clearly appears from the record that there has been an abuse of such discretion,' it is also true that the trial court's discretion is not unlimited and does not extend to the erroneous application of the law to undisputed facts. If the facts are such that solely questions of law are presented, the trial court's action is reviewable, and should be reviewed on appeal. Differently stated, *the trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts."* (emphasis supplied).

It is our view that in the instant case the trial court in denying the temporary injunction correctly applied the law to the undisputed controlling facts, and hence did not abuse its discretion.

Judgment of the trial court affirmed.

COLEMAN, Justice (concurring).

I concur in the opinion of the majority except on the question hereinafter discussed. Article 5160, subd. A, V.A.C.S., provides in part: "Any person or persons * * * entering into a formal contract in excess of Two Thousand Dollars ($2,000) with * * * any county of this State * * * shall be required before commencing such work to execute to the aforementioned governmental authority * * * the statutory bonds as hereinafter prescribed."

Article 2368a, Sec. 2, V.A.C.S., prohibits a county from making any contract requiring the payment of $2,000.00 or more out of county funds without first submitting the proposed contract to competitive bids in the manner set out in the article. The article further provides that "if the contract is for the construction of public works, then the successful bidder shall be required to give a good and sufficient bond in the full amount of the contract price, for the faithful performance of such contract, executed by some surety company authorized to do business in this State in accordance with the provisions of Article 5160, Revised Statutes of 1925, and amendments thereto." The final paragraph of this article provides:

"Any and all such contracts or agreements hereafter made by any county or city in this State, without complying with the terms of this section, shall be void and shall not be enforceable in any Court of this State, and the performance of same and the payment of any money thereunder may be enjoined by any property taxpaying citizen of such county or city."

It is my opinion that the performance bond required by Art. 2368a, Sec. 2, V.A. C.S., must conform to the requirements of Art. 5160, V.A.C.S., as to content and form. I do not think that by referring to Art. 5160 it was intended that all of the provisions of that article referring to bonds were incorporated in Art. 2368a. Art. 5160 does not provide that a failure to post the bonds required prior to beginning work would render the contract void, nor does it specifically authorize a taxpaying citizen to bring suit to enjoin performance of work under the contract. Art. 2368a does not require that the performance bond be posted prior to beginning work, and does not require that a payment bond be posted.

While the County and the contractor must comply with all of the provisions of both articles, the failure of the contractor to post his performance bond prior to begin-

ning work did not violate Art. 2368a, which contained the provision authorizing the injunction by a taxpayer. This failure did violate Art. 5160, but that article contains no provision authorizing a taxpayer's suit and declaring the contract void and unenforceable.

The County did not terminate the contract after the work had begun because of the contractor's failure to post the required bonds, and, at the time judgment herein was rendered, had approved and accepted the bonds tendered in fulfillment of the obligation of the contractor.

In Osborne v. Keith, Tex.Com.App., 142 Tex. 262, 177 S.W.2d 198, opinion adopted, the court said:

"This court recognizes the right of a taxpaying citizen to maintain an action in a court of equity to enjoin public officials from expending public funds under a contract that is void or illegal. Looscan v. County of Harris, 58 Tex. 511; City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367, error refused, 108 Tex. 14, 191 S.W. 1138, 193 S.W. 139; Hoffman v. Davis, 128 Tex. 503, 100 S.W.2d 94. The vigilance of a citizen who takes upon himself that burden in the interest of good government is to be commended. However, the procedure is generally recognized as being drastic and, in order to be authorized to maintain such an action, a citizen must bring himself strictly within the established rules. Governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review. The right, therefore, of a citizen to maintain such an action is strictly limited to cases of illegality of the proposed expenditure and does not extend to cases of unwise or indiscreet expenditures. The contract upon which it is proposed to pay out public funds must be illegal and not merely voidable at the option of the public official entrusted with authority in the premises. Spears v. City of South Houston, 136 Tex. 218, 150 S.W.2d 74; Bexar County v. Hatley, 136 Tex. 354, 150 S.W.2d 980; Mayer v. Kostes, Tex.Civ.App., 71 S.W.2d 398, writ refused; Glimpse v. Bexar County, Tex.Civ.App., 160 S.W.2d 996, writ refused."

In Globe Indemnity Co. v. Barnes, Com. App., 288 S.W. 121, the court said:

"The purpose of the statute under consideration was to protect persons furnishing material or labor in the construction of public works against which there could exist no lien for their protection. The method pursued was intended to effect this protection through a bond required to be executed by the contractor. The execution of the bond conditioned as required by the statute is made a condition precedent to the right to commence such work. Such a contract can only be carried out lawfully after the execution of the bond as required by statute. The effect of the statute is to declare the liability of one executing the bond for such a contractor."

Art. 5160 contemplates that the bonds shall be posted after the contract has been signed, but before work has begun. The contract has not been shown to be illegal. Beginning work prior to the posting of the bonds was illegal, and could have been prevented by the County. It is unnecessary to determine whether or not the plaintiff, as a taxpaying citizen, had a sufficient interest to maintain this suit since the bonds were posted prior to the trial on the merits, and prior to the rendition of judgment at the preliminary hearing. The completion of the work after the required bonds were posted was not illegal.