

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL.
ATTORNEY GENERAL

April 23, 1976

The Honorable James H. Harwell     Opinion No. H-813
Executive Director
Texas Industrial Commission     Re: Contractors' perfor-
814 Sam Houston State Office Bldg. mance and payment bonds
Austin, Texas 78711     required under articles
    5160 and 5472a, V.T.C.S.

Dear Mr. Harwell:

You have requested our opinion regarding the applicability
of article 5160, V.T.C.S., to contracts not in excess of
$15,000. The statute provides:

> A. Any person or persons, firm, or
> corporation, hereinafter referred to as
> "prime contractor," entering into a formal
> contract in excess of $15,000 with this
> State, any department, board or agency
> thereof; or any county of this State,
> department, board or agency thereof; or
> any municipality of this State, department,
> board, or agency thereof; or any school
> district in this State, common or independent,
> or subdivision thereof; or any other governmental
> or quasi-governmental authority, whether
> specifically named herein or not, authorized
> under any law of this State, general or
> local, to enter into contractual agreements
> for the construction, alteration or repair of
> any public building or the prosecution or
> completion of any public work, shall be
> required before commencing such work to
> execute to the aforementioned governmental
> authority or authorities, as the case may
> be, the statutory bonds as hereinafter
> prescribed. Each such bond shall be executed
> by a corporate surety or corporate sureties

p.3431

duly authorized to do business in this State.
In the case of contracts of the State or a
department, board, or agency thereof, the afore-
said bonds shall be payable to the State and shall
be approved by the Attorney General as to form.
In case of all other contracts subject to this
Act, the bonds shall be payable to the govern-
mental awarding authority concerned, and shall
be approved by it as to form. Any bond
furnished by any prime contractor in an
attempted compliance with this Act shall be
treated and construed as in conformity with
the requirements of this Act as to rights
created, limitations thereon, and remedies
provided.
   (a) A Performance Bond in the amount
of the contract conditioned upon the faithful
performance of the work in accordance with the
plans, specifications, and contract documents.
Said bond shall be solely for the protection
of the State or the governmental authority
awarding the contract, as the case may be.
   (b) A Payment Bond, in the amount of the
contract, solely for the protection of all
claimants supplying labor and material as
hereinafter defined, in the prosecution of the
work provided for in said contract, for the use
of each such claimant.

Between 1959 and its amendment in 1975, the statute required
bonds for any contract in excess of $2000. Prior to 1959,
performance and payment bonds were mandatory for all public
contracts, without regard to their amount. You ask whether
the "prime contractor" may be required by the contracting
governmental authority to execute any bond for contracts not
in excess of $15,000.

   The principal argument against the applicability of
article 5160 to contracts under $15,000 is the statute's
failure to require bonds for such contracts. It appears to
be settled, however, that a contracting governmental authority
may on its own initiative require a contractor to post bond
even in the absence of statute. In Mosher Manufacturing Co.

p.3432

v. Equitable Surety Co., 229 S.W. 318 (Tex. Sup. 1921), the
contract at issue had been negotiated prior to the effective
date of the statute requiring contractor bonds. Nevertheless,
the court held that

> independent of any statute, a municipality
> which has the power to contract for the
> construction of public buildings has the
> implied authority to bind the contractors
> to pay the claims of materialmen and
> laborers. . . . Id., at 320.

As the court stated in N.O. Nelson Co. v. Stephenson, 168
S.W. 61 (Tex. Civ. App. -- San Antonio 1914, writ ref'd), the
effect of the statute was to require a contractor to give
bond. But prior to the statute, the contracting authority had
the option of requiring bond. Id., at 62.

If the contracting authority requires a bond when one is
not required by statute, the bond is to be construed as a
common law obligation. Metropolitan Casualty Insurance Co.
of New York v. Texas Sand and Gravel Co., 68 S.W.2d 551, 552
(Tex. Civ. App. -- Waco 1934, writ dism'd). As such, it is
not subject to the provisions of article 5160, but depends
rather upon the terms of the bond itself. Johnson Service
Co. v. Cinbar Engineering Co., 409 S.W.2d 471, 473-4 (Tex.
Civ. App. -- Austin 1966, no writ). C.f. United Tile Co.
v. Kermit Independent School District, 273 S.W.2d 434 (Tex.
Civ. App. -- El Paso 1954, writ ref'd n.r.e.).

The other argument against permitting the contracting
governmental authority to require bonds on contracts of less
than $15,000 is the existence of article 5472a, V.T.C.S. It
has been established that article 5160 is in pari materia
with article 5472a, and that the two statutes must be construed
together. C.A. Dunham Co. v. McKee, 57 S.W.2d 1132, 1135
(Tex. Civ. App. -- El Paso 1933, writ ref'd); Trinity
Universal Insurance Co. v. McLaughlin, 373 S.W.2d 66, 69
(Tex. Civ. App. -- Austin 1963, no writ). Article 5472a
provides, in pertinent part:

> Any person, firm, corporation, or trust
> estate, furnishing any material, apparatus,
> fixtures, machinery, or labor to any
> contractor under a prime contract where
> such prime contract does not exceed the sum
> of $15,000 for any public improvements in
> this State, shall have a lien on the moneys,
> or bonds, or warrants due or to become due
> to such contractor for such improvements
> provided such person, firm, corporation,
> trust estate, or stock association shall before
> any payment is made to such contractor, notify
> in writing the officials of the state, county,
> town, or municipality whose duty it is to pay
> such contractor of his claim, such written notice
> to provide and be given within the prescribed
> time as follows. . . .

The historical development of article 5472a closely parallels that of article 5160. Prior to 1959, a lien under article 5472a was authorized on all public contracts. From 1959 until 1975, the lien was applicable to all such contracts of less than $2000. And in 1975, the amount was raised to $15,000.

In Huddleston and Work v. Kennedy, 57 S.W.2d 255 (Tex. Civ. App. -- Eastland 1931, no writ), the court addressed itself to the relationship between article 5160 and article 5472a, and concluded that article 5472a "provides for an additional lien to that provided in article 5160." Id. at 258. In our opinion, the purpose of article 5472a is to protect subcontractors in the event the contracting governmental authority does not require the prime contractor to execute a payment bond. When a payment bond is required as part of a prime contract of less than $15,000, a subcontractor has the option of proceeding against a defaulting prime contractor pursuant to that bond, or, alternatively, by perfecting his lien under article 5472a.

Thus, on the basis of all the foregoing, we conclude that a contracting governmental authority may require a prime contractor to execute a bond for contracts not in excess of $15,000.

You also ask whether contracts for maintenance, such as painting a courthouse, are subject to the provisions of articles 5160 and 5472a. Article 5160 applies to contracts for the "construction, alteration, or repair of any public building or the prosecution or completion of any public work." Article 5472a speaks in terms of "public improvements." As noted above, the two statutes are _in pari materia_ and must be construed together.

In R.C. _Overstreet v. Houston County_, 365 S.W.2d 409 (Tex. Civ. App. -- Houston 1963, writ ref'd n.r.e.), the court held that a contract for the air conditioning of a county courthouse constituted "public works" under article 5160 where central system air conditioners were to be installed as fixtures, or improvements of a fixed nature. _Id._, at 412-13. In _Mayer v. Texas Tire & Rubber Co._, 223 S.W. 874, (Tex. Civ. App. -- Fort Worth 1920, no writ), "alteration," as applied to a building, was defined as "a substantial change therein." _Id._, at 875. Most other jurisdictions agree that "alteration" means a modification or variation that does not destroy the identity of the thing affected. See e.g. _Fleming v. Phelps-Dodge Corp._, 496 P.2d 1111, 1112 (N.M. Ct. App. 1972); _Priest v. Housing Authority of City of Oxnard_, 80 Cal.Rptr. 145, 149 (Cal. Ct. App. 1969); _Hamilton v. Link-Hellmuth_, 146 N.E.2d 615, 618 (Ohio Ct. App. 1957). In our opinion, a contract for painting a courthouse could be included within those contracts affected by articles 5160 and 5472a. As to maintenance contracts in general, we believe that whether a particular contract is embraced within the coverage of those two statutes depends upon whether such contract calls for a "substantial change" to a "public work" or "public building."

As to your third question, we express no opinion as to the recourse which might be available to a prime contractor in the event a governmental authority requires a bond for a public contract under $15,000.

## S U M M A R Y

A contracting governmental authority may require a prime contractor to execute a bond for contracts not in excess of $15,000. Whether a particular maintenance contract is subject to the provisions of article 5160 and article 5472a depends upon whether such contract calls for a "substantial change" to a "public work" or "public building."

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb